

FILED
2022 Mar-30  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CHERYL MCCANTS, o/b/o PATRICIA NIX, the estate of PETTIS NIX, Sr., and REGINALD NIX | ) ) ) ) ) | |
| Plaintiff, | ) ) | 5:19-cv-0633-LSC |
| v. | ) ) | |
| JO ANNE BARNHART, Commissioner of the Social Security Administration | ) ) ) | |

## MEMORANDUM OF OPINION

This is the appeal of a final decision by the Social Security Administration denying the plaintiff's application for widow's insurance benefits and a lump sum death payment. However, the plaintiff, who is proceeding *pro se*, also alleges various other claims, including constitutional violations. (Amended Complaint, Doc. 17-1.) Defendant Jo Anne Barnhart, Commissioner of the Social Security Administration ("Commissioner" or "SSA"), filed a motion to dismiss several claims in the complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 9.) For the reasons stated below, the Commissioner's motion to dismiss several of the plaintiff's claims is due to be granted. Additionally, as the Court explains, the Commissioner's decision denying the plaintiff's application for widow's insurance

benefits and a lump sum death payment is supported by substantial evidence and in accord with applicable law, and thus the decision is due to be affirmed and this action dismissed in its entirety.

## I.    PROCEDURAL HISTORY

In August 2014, Plaintiff, Cheryl McCants ("Plaintiff"), applied for widow's insurance benefits ("WIB") and the lump sum death payment ("LSDP") on the earnings record of number holder Pettis Nix ("Mr. Nix"), on behalf of Mr. Nix's widow, Patricia Nix ("Ms. Nix"). (Tr. at 17). Plaintiff is Mr. and Ms. Nix's daughter. The SSA denied this application initially, upon reconsideration, and by an administrative law judge ("ALJ") decision issued after a hearing (Tr. at 11-19, 32-40). The SSA determined that Ms. Nix was not qualified for WIB and the LSDP on Mr. Nix's earnings record because Mr. Nix did not work long enough in Social Security-covered employment to qualify for benefits. Mr. Nix needed 40 quarters of coverage to meet the required insured status, but he had earned only 38 quarters. (Tr. at 32.) In February 2019, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the Commissioner's final decision on Ms. Nix's WIB and LSDP claims. (Tr. at 4-9).

Plaintiff then appealed to this Court, joined by her brother, and Mr. and Ms. Nix's son, Reginald Nix. In addition to disputing whether substantial evidence

supports the ALJ's decision (Counts II and III of Plaintiff's Amended Complaint), Plaintiff also asserts that the SSA's denial of Ms. Nix's 2014 application violated Ms. Nix's due process rights under the Fifth Amendment to the U.S. Constitution because the SSA did not provide sufficient information regarding Mr. Nix's insured status, deadlines to provide additional evidence, or obtaining assistance to collect additional information (Count I). Plaintiff also asserts several claims relating to two applications for retirement insurance benefits that Mr. Nix filed in 1997 and 2000. Plaintiff alleges the same due process violations with respect to the notice provided to Mr. Nix on his applications (Count IV) as well as claims that the SSA violated the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 500-596, in the manner in which it addressed Mr. Nix's 1997 and 2000 applications (Count V). Plaintiff seeks declaratory relief (Count VI) and a writ of mandamus (Count VII) to compel the SSA to find Ms. Nix entitled to spousal benefits from September 2000 to July 2014, and to reopen Mr. Nix's 1997 and 2000 applications so Plaintiff may present additional evidence to the extent Mr. Nix also applied for benefits on his earnings record.

The Commissioner moved to dismiss the due process and APA claims for failure to state a claim, lack of subject matter jurisdiction, and as barred by the doctrine of laches. (Doc. 9.) Plaintiff responded in opposition. (Doc. 11.) While the Commissioner's motion to dismiss was pending, this Court ordered the

Commissioner to file its response to the remaining claims, including, pursuant to 42 U.S.C. § 405(g), a certified copy of the transcript of the administrative record. (Doc. 12.) The Commissioner filed its answer and the transcript on February 22, 2021. (Doc. 14). A briefing schedule was entered. (Doc. 15.) Rather than file a brief in support of her claim that the Commissioner's decision was not based upon substantial evidence, Plaintiff filed a motion to amend her complaint (doc. 17), and the Court allowed her to do so. (Docs. 20, 17-1.) Plaintiff's amended complaint, in her words, "maintains the counts and allegations against the same defendants from the original complaint." (Doc. 17 at 1.) The Commissioner answered the amended complaint. (Doc. 21.)

## II.   FACTS[1]

Mr. Nix applied for retirement insurance benefits ("RIB") on his earnings record in July 1997. (Tr. at 4, 18;[2] Doc. 9-1, Decl. of Shinekia M. Smith ("Smith Decl.") ¶ 2). The SSA denied Mr. Nix's 1997 RIB application due to lack of insured

---

[1]     As discussed further herein, the Court may consider evidence apart from solely the facts alleged in Plaintiff's amended complaint. This is because the Commissioner moves to dismiss based upon this Court's lack of subject matter jurisdiction. Accordingly, some facts are taken from Plaintiff's amended complaint, some are taken from the transcript of the administrative record submitted by the SSA, and some are taken from a declaration of Shinekia Smith, a Social Insurance Specialist for the SSA on the Retirement and Survivors Insurance Programs Team, which was submitted with the Commissioner's motion to dismiss. Alternatively, and as further discussed herein, some of the facts discussed are matters which are referenced by Plaintiff in the amended complaint and matters upon which this Court may take judicial notice.

[2]     References to the transcript of the administrative record are designated "Tr. at __."

status because he did not have at least 40 quarters of coverage. (Tr. at 5-7; Smith Decl. ¶ 2, Ex. 2). The SSA processed Mr. Nix's 1997 RIB application and marked it as "adjudication complete" as of September 1997. (Tr. at 5-7; Smith Decl. ¶ 2, Ex. 1, Ex. 3).

On November 24, 1998, Ms. Nix applied for RIB on her earnings record (Smith Decl. ¶ 3, Ex. 4). Ms. Nix remarked in her application that Mr. Nix would not be filing for benefits on her earnings record because his civil service pension offset any benefits he might otherwise be eligible for as her spouse. (Smith Decl. ¶ 3, Ex. 4). In January 1999, the SSA found Ms. Nix entitled to RIB as of February 1999. (Smith Decl. ¶ 3, Ex. 4, Ex. 5). The development worksheet for Ms. Nix's RIB claim indicates she lived at the same address that Mr. Nix used in his 1997 RIB application (*Id.* Ex. 1, Ex. 4). To date, Ms. Nix continues to receive RIB on her earnings record amounting to at least $1,100 each month. (Tr. at 22-23, 220).

Mr. Nix filed another application for RIB on his earnings record in June 2000. (Tr. at 4, 20; Smith Decl. ¶ 4, Ex. 6). The SSA denied Mr. Nix's 2000 RIB application because Mr. Nix had not established at least 40 quarters of coverage, and processed this claim and marked it as "adjudication complete" as of June 2000. (Smith Decl. ¶ 4, Ex. 3, Ex. 6, Ex. 7). However, because an RIB application also serves as an application for Medicare Part A, the SSA issued a notice of award in June 2000

approving Mr. Nix's entitlement to Medicare Part A beginning September 2000 as a Medicare Qualified Government Employee and informing him that he was not entitled to any other benefits. (Tr. at 4; Smith Decl. ¶ 5). *See* 42 C.F.R. §§ 406.6(d)(3); Program Operations Manual System (POMS) HI 00801.022A, http://policy.ssa.gov/poms.nsf/lnx/0600801022 (last revised May 14, 2007). Mr. Nix subsequently enrolled in Medicare Part B in July 2001, withdrew in August 2002, and re-enrolled in July 2003. (Tr. at 4, 209-12; Smith Decl. ¶ 6).

The SSA no longer has copies of the notices issued to Mr. Nix or Ms. Nix between 1997 and 2000, as the agency schedules the destruction of claims notices seven years from the date of adjudication of the most recently awarded claim and two years after the final denial. (Tr. at 4; Smith Decl. ¶ 7). However, by 1997, the SSA was already using the Modernized Claims System ("MCS"), which automatically generated notices upon adjudication. (Tr. at 4; Smith Decl. ¶¶ 2-4). *See* POMS NL 00725.002, http://policy.ssa.gov/poms.nsf/lnx/0900725002 (last revised March 23, 2000). Notices of disapproved claims that the MCS generates contain information on how to appeal the determination, including notification that a claimant has 60 days from the date he receives notice of his disapproved claim to appeal the determination. *See id.*; POMS NL 00725.008, http://policy.ssa.gov/poms.nsf/lnx/0900725008 (last

revised May 17, 2013). The SSA did not receive a request for reconsideration of either of Mr. Nix's RIB applications.

On July 26, 2014, Mr. Nix died. (Tr. at 20). As noted earlier, on August 22, 2014, Plaintiff, proceeding *pro se*, protectively applied on behalf of Ms. Nix for WIB and the LSDP on Mr. Nix's earnings record and formally applied on April 8, 2015 (Tr. at 20). The SSA denied Ms. Nix's WIB and LSDP claims initially (April 19, 2015), on reconsideration, and after a hearing with an ALJ (Tr. at 11-19, 32-40).

During the hearing, the ALJ explained to Plaintiff that Ms. Nix did not qualify for WIB and LSDP on Mr. Nix's earnings record because he did not work long enough in Social Security-covered employment to qualify for benefits. (Tr. at 213-40.) Mr. Nix needed 40 quarters of coverage to be considered fully insured for Social Security benefits, but he had only 38 quarters of coverage. (*Id.*) Although Plaintiff contended that Mr. Nix had additional quarters of coverage based on his military service prior to 1957, the ALJ explained that Mr. Nix's credits for active military service from August 1953 through August 1956 were not used because those credits had already been used by the Office of Personnel Management to qualify for another federal benefit, civil service retirement benefits. (*Id.*) The ALJ further explained that even if Mr. Nix's military credits had not been used to determine his civil service retirement benefits, the amount of money Ms. Nix was receiving on her own earnings records

(approximately $1500 per month) well exceeded the amount that she would receive for widow's benefits on Mr. Nix's earnings record (approximately $500 per month). (*Id.*) It was explained to Plaintiff that an individual can only receive benefits off of one earnings record, and they receive benefits on the earnings record that is most beneficial to them. (*Id.*)

At the hearing, Plaintiff stated that she understood the foregoing, but wanted to say that Mr. Nix should have received additional credits for his military service, and she requested that Reginald Nix, Mr. Nix's son and her brother, be allowed to testify regarding this. Reginald Nix then testified that Mr. Nix still had a claim file open at Social Security concerning RIB. (*Id.*) He stated he believed that Mr. Nix's active military pay from 1957 through 1968 was not credited to him. He also discussed active duty pay in 1970 and 1971 that he claims was not credited. He discussed wanting to reopen Mr. Nix's earning record to add credits. He also stated that Mr. Nix never received a denial notice for RIB when he filed in 1997 and 2000. (*Id.*)

In his decision, the ALJ found that Ms. Nix was not entitled to WIB and LSDP on the earnings record of Mr. Nix based upon the reasoning stated above and explained to Plaintiff at the hearing. (Tr. at 18.) The ALJ further denied Reginald Nix's request to reopen Mr. Nix's earnings record and his application for RIB. (*Id.*) Although the ALJ stated that the only issue before him was whether Ms. Nix was

entitled to WIB and the LSDP, he stated that he would nonetheless discuss the issue raised by Reginald Nix. (*Id.*) He stated that Reginald Nix submitted Army Reserve Pay Voucher Summaries and Military Pay Vouchers for the years 1966-1971, but that all of the pay voucher summary sheets specifically state in the top left corner that the pay was for "Inactive Duty," and no social security taxes were withheld on any of the Military Pay Vouchers submitted. (*Id.* at 18-19.) The ALJ stated that no mistakes were made concerning the compilation of Mr. Nix's earnings record. (*Id.* at 19.)

Plaintiff appealed to the Appeals Council, raising several detailed arguments with regard to specific time periods of Mr. Nix's employment that she claimed he ought to have received credit for. On February 25, 2019, the Appeals Council denied Plaintiff's request for review in a detailed letter, which rendered the ALJ's decision the agency's final decision on Ms. Nix's WIB and LSDP claims (Tr. at 4-9).

## III.   STANDARDS

Under a Rule 12(b)(6) motion to dismiss for failure to state a claim, dismissal of the complaint is appropriate "where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). Courts facing a Rule 12(b)(6) motion may only consider well-pleaded factual allegations, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). While Plaintiff's complaint "does not need detailed factual allegations… [it] requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The factual allegations in the complaint must at least raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if doubtfully so, *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, a party may attack subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure by either a facial attack or a factual attack. *Lawrence v. Dundar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529 (internal quotations and brackets omitted). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (internal quotations and brackets omitted). Courts have distinguished these two types of attacks as follows:

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion–the court must consider the allegations of the complaint to be true. But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–it's very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (internal citations and indentations omitted).

"If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "The objection that a federal court lacks subject-matter jurisdiction, *see* [sic.] Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). "[S]ubject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

## IV.  DISCUSSION

### A.  Plaintiff's allegations of Due Process clause and APA violations with respect to Ms. Nix's 2014 applications for WIB and LSDP (Count I) fail to state a claim upon which this Court could grant relief

The SSA's actions in adjudicating Ms. Nix's 2014 applications for WIB and LSDP did not violate the Due Process Clause of the Fifth Amendment or the APA. Plaintiff contends that the SSA did not provide sufficient information regarding Mr. Nix's insured status, deadlines to provide additional evidence, or obtaining assistance to collect additional information. The record disproves these claims, showing that the SSA provided this information. (Tr. at 32-40.) Plaintiff fails to establish that Ms. Nix was entitled to any additional notice or information beyond what the SSA already provided. Accordingly, these claims are due to be dismissed.

Specifically, the SSA sent numerous notices to Plaintiff and Ms. Nix during the administrative appeals process. These notices contained the information that Plaintiff claims to have not received. (Tr. at 32-40.) An April 2015 initial determination informed Plaintiff and Ms. Nix that Ms. Nix was not qualified for WIB and the LSDP on Mr. Nix's earnings record because Mr. Nix needed 40 credits to meet the required insured status, but he had earned only 38 credits. (Tr. at 32.) The notice of reconsideration sent to Plaintiff and Ms. Nix in June 2015 contained more detailed information on Mr. Nix's credits and his earnings record, listing the quarters of coverage he had earned each year from 1957 to 1977. (Tr. at 38-40.) Plaintiff's submissions in requesting a hearing in August 2015 on Ms. Nix's behalf indicate that Plaintiff was fully aware of Mr. Nix's insured status, the quarters of coverage he

earned, and what she needed to establish that Mr. Nix had sufficient quarters of coverage. (Tr. at 41-46.)

Further, the SSA also repeatedly informed Plaintiff and Ms. Nix of deadlines to produce evidence and the option to get assistance from the SSA to gather additional information. The hearing request form that Plaintiff completed in August 2015 included a section directing her to state whether she had additional evidence and to submit such evidence within ten days. (Tr. at 41.) In December 2015, the SSA's hearing office notified Plaintiff of the need to submit all evidence relating to the case as early as possible, the option to bring evidence to the hearing that she could not submit earlier, and the option to get help from the hearing office or the ALJ to obtain evidence. (Tr. at 52-53.)

The ALJ assigned to the case then sent a notice to Plaintiff in August 2016, informing her of the time and location of the hearing, and reminding her of the need to submit any additional evidence as soon as possible and the option to bring evidence to the hearing. (Tr. at 68.) The ALJ also provided the option to request a subpoena to obtain documents or testimony that Plaintiff might reasonably need for her case. (Tr. at 68.) Plaintiff submitted requests for subpoenas along with a request to reschedule the hearing in September 2016. (Tr. at 81-83, 111.) In rescheduling the hearing, the ALJ issued another notice in December 2016, identifying the time and place for the

hearing and reiterating the need for Plaintiff to submit additional evidence as soon as possible and the option to request a subpoena for additional information. (Tr. at 94-95.) The hearing record further shows Plaintiff had the opportunity to submit evidence at the hearing. (Tr. at 222, 228-31, 233-34.)

Given that the information and opportunities that Plaintiff asserts she and Ms. Nix did not receive were expressly provided to them several times, Plaintiff's due process allegations relating to Ms. Nix's WIB and LSDP claims fail. "Procedural due process requires only an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Cherry v. Heckler*, 760 F.2d 1186, 1190 (11th Cir. 1985) (quoting *Mathews v. Eldridge*, 424 U.S. 323, 333 (1976)). The SSA provided Plaintiff the requisite opportunity. The SSA repeatedly notified Plaintiff and Ms. Nix that the denial of Ms. Nix's application was because Mr. Nix's quarters of coverage fell short of the required 40 quarters, and that Plaintiff had the opportunity to submit additional evidence and obtain assistance with gathering information for months leading up to the hearing. (Tr. at 52-53, 68, 94-96.) Plaintiff had the opportunity to present evidence and argument on this issue in the months between the SSA's receipt of her hearing request and the hearing, as well as at the hearing. (Tr. at 41-46, 52-53, 68, 94-96, 215-40.)

For similar reasons, Plaintiff's APA allegations relating to Ms. Nix's WIB and LSDP claims also fail.[3] Plaintiff fails to identify the provisions of the APA that the SSA purportedly violated in adjudicating Ms. Nix's claims. Consistent with 5 U.S.C. § 554(b), the SSA timely informed Plaintiff and Ms. Nix of the time, place, and nature of the hearing scheduled for Ms. Nix's claims, the applicable legal authority, and the matters of fact and law asserted. (Tr. at 36-40, 51-60, 66-80, 92- 102.) Consistent with 5 U.S.C. § 554(c), the SSA also gave Plaintiff the opportunity to submit and consider facts and arguments for Ms. Nix's WIB and LSDP claims. (Tr. at 41, 52-53, 68, 94-96.) Thus, this Court could grant no relief with respect to Count I, because the record shows that the SSA already complied with the exact procedures that Plaintiff seeks to impose with these claims.

**B.    Plaintiff's allegations of Due Process Clause and APA violations with respect to Mr. Nix's 1997 and 2000 applications for RIB (Counts IV and V) are barred under the doctrine of laches**

Laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in the absence of an appropriate statute of

---

[3]    Plaintiff appears to have abandoned her original claim that the SSA violated the APA with regard to the manner in which it dealt with Ms. Nix's 2014 application, as she makes no such allegation in her amended complaint. However, in her motion for leave to file an amended complaint, Plaintiff states that she "maintains the counts and allegations against the same defendants from the original complaint." Doc. 17 at 1. Accordingly, in the interest of completeness and considering that Plaintiff is proceeding *pro se*, this Court will address the APA violation claim as it pertains to Ms. Nix's 2014 applications.

limitations. *See Equal Emp't Opportunity Comm. v. Dresser Industries, Inc.*, 668 F.2d 1199, 1201 (11th Cir. 1982). To establish laches, a defendant must demonstrate that a plaintiff inexcusably delayed bringing the claim at issue, and that the delay caused the defendant undue prejudice. *See Democratic Exec. Comm. of Florida v. Lee*, 915 F.3d 1312, 1326 (11th Cir. 2019) (citing *U.S. v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005)). The Court finds that the Commissioner has established the elements for laches with respect to Plaintiff's claims based on the RIB applications that Mr. Nix filed and that the SSA adjudicated in 1997 and 2000.

### 1. Inexcusable Delay

Plaintiff inexcusably delayed bringing any claims relating to Mr. Nix's RIB applications by nearly two decades. The SSA sent Mr. Nix initial determinations on his applications in 1997 and 2000, but Mr. Nix and Plaintiff failed to timely appeal either initial determination. *See* 20 C.F.R. § 404.909(a)(1) (2019). The SSA's claims system, MCS, would have automatically generated notices to Mr. Nix on the initial determinations issued for each application, in 1997 and in June 2000, which would have informed him of the deadline to appeal the initial determination. (Smith Decl. at ¶¶ 2, 4.) The MCS claims summary for Mr. Nix and development worksheets for both claims confirm the SSA completed adjudication and processing of Mr. Nix's 1997 RIB application in September 1997 and completed adjudication and processing

of his 2000 RIB application in June 2000. (*Id.*) The MCS also generated and sent a notice on Ms. Nix's 1998 RIB application to the same address that Mr. Nix used for his RIB applications, undermining any suggestion that the MCS somehow did not work as expected for either of Mr. Nix's RIB applications filed before and after Ms. Nix's RIB application. (*Id.* at ¶ 3.) *See*, *e.g.*, *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (stating "a presumption of regularity attaches to the action of Government agencies"); *Sierra Club v. U.S. Army Corps of Engineers*, 295 F.3d 1209, 1223 (11th Cir. 2002) (stating "[a]bsent evidence to the contrary, [courts] presume that an agency has acted in accordance with its regulations").

Assuming Plaintiff's assertions are true that Mr. Nix never received the SSA's initial determination notices, Plaintiff fails to explain the extensive delay in seeking a remedy for this purported deficiency of notice. Plaintiff failed to show that Mr. Nix made any attempt to obtain an initial determination for either application in the years after he filed his applications. Seventeen years elapsed from the time Mr. Nix filed his RIB application in 1997 and 14 years from the time he filed his second RIB application in 2000 until his death, with no indication that he or anyone on his behalf ever attempted to inquire about the status of either application prior to his death. *See Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980) (in considering length of plaintiff's delay, courts look at date plaintiff knew or

should have known, in the exercise of reasonable diligence, of infringing conduct that gave rise to claim).

Mr. Nix should have been on notice as of 1999 of the possibility that he had not received sufficient notice of the outcome of his 1997 RIB application. Following the filing of his 1997 RIB application, Ms. Nix filed an application for RIB on her own earnings record in November 1998 and received a notice of an award by January 1999. (Doc. 9-1 at 2-3, 10-16.) Ms. Nix was married to and lived with Mr. Nix at the time of his RIB applications and her RIB application. Despite receiving a notice regarding a decision on an application for RIB at his residence in 1999, albeit on his wife's RIB application instead of his own, Mr. Nix did not contact the SSA to inquire about his own RIB application filed in 1997 at any point after 1997.

Even if Mr. Nix somehow remained unaware of the notice that Ms. Nix received on her RIB application in 1999 and what that notice would have indicated about his RIB application filed in 1997, Mr. Nix should have become aware of the denial of his June 2000 RIB application as of June 2000. Mr. Nix's RIB application led to a notice of award issued in June 2000 for Medicare Part A beginning September 2000. (*Id.* at 4.) SSA records show that this notice of award for Medicare Part A informed Mr. Nix that he was not entitled to any other benefits. (*Id.*) Mr. Nix also received communications from the SSA at least three more times following this notice

between 2001 and 2003, regarding his enrollment in Medicare Part B. (Tr. at 4.) Mr. Nix, however, failed to follow up on his RIB applications during these same years he was in regular contact with the SSA.

Plaintiff let nearly two decades elapse before attempting to bring claims based on Mr. Nix's RIB applications. Further, Mr. Nix knew of the SSA's denial of his RIB applications or at least should have known of the delay in his receipt of the SSA's initial determinations on his RIB applications as of September 2000, if not earlier. Plaintiff fails to provide a valid reason for Mr. Nix's failure to assert any claims relating to his RIB applications from 2000 until his death in 2014.

### 2.    Undue Prejudice

Further, Plaintiff's inexcusable delay in appealing Mr. Nix's RIB applications has resulted in undue prejudice to the SSA's ability to defend itself. The SSA destroys its paper files seven years from the date of adjudication of the most recently awarded claim and two years after the final denial. (Doc. 9-1 at 4-5.) The SSA therefore no longer has copies of the notices sent to Mr. Nix that would establish that the SSA did inform him of the initial determinations on his RIB applications in 1997 and 2000 and his rights and time limits to appeal these initial determinations. Because Mr. Nix died before Plaintiff ever raised this claim, it is impossible to obtain testimony or a statement from Mr. Nix to establish whether he actually received these initial

determinations. Plaintiff's and Mr. Nix's delay has thus led to the SSA having to rely on an incomplete record on the issue of Mr. Nix's retirement benefits claims. *See Coffeey v. Braddy*, 834 F.3d 1184, 1191 (11th Cir. 2016) (upholding finding of undue prejudice where delay led to incomplete and ambiguous documentary evidence that prevented court from determining defendant's violation of decree at issue).

Thus, Plaintiff's lengthy and inexcusable delay in bringing these claims and the resulting undue prejudice bar Plaintiff from proceeding with these claims under the doctrine of laches.

### C. Alternatively, this Court lacks subject matter jurisdiction over Plaintiff's allegations of Due Process Clause and APA violations with respect to Mr. Nix's 1997 and 2000 applications for RIB (Counts IV and V)

This Court also lacks subject matter jurisdiction to hear Plaintiff's claims that relate to Mr. Nix's 1997 and 2000 applications for RIB.

#### 1. Jurisdiction under the Social Security Act

Any claims Plaintiff may have regarding Mr. Nix's 1997 and 2000 RIB applications necessarily arise under the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 402, 404, 405. Sections 405(g) and (h) of Title 42 of the United States Code limit judicial review of the SSA's final administrative decisions. These provisions are the exclusive basis for jurisdiction in cases arising under the Act, providing as follows:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . .

No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28, United States Code, to recover on any claim arising under this subchapter.

42 U.S.C. § 405(g), (h). Congress has thus explicitly stated that, in claims arising under the Act, judicial review is permitted only in accordance with 42 U.S.C. § 405(g), as limited by § 405(h). *See, e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 8-9 (2000). Thus, by its terms, the statute prohibits a court from otherwise exercising federal question jurisdiction over claims arising from the Act. *See Eldridge*, 424 U.S. at 327 (noting that Section 405(h) bars federal question jurisdiction). Where, as here, the right to sue is expressly created by statute and the statute provides a special remedy, that remedy is exclusive. *See United States v. Babcock*, 250 U.S. 328, 331 (1919).

As noted, the language of 42 U.S.C. § 405(g) expressly limits judicial review to "any final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). The Act does not itself define the term "final decision," and thus,

"its meaning is left to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 763 (1975). The regulations provide four administrative review steps that must first be exhausted before a claimant receives a "final decision," and can then seek judicial review of that decision. *See* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5); *see also Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988).

The first administrative review step is an initial determination made by the SSA. 20 C.F.R. §§ 404.900(a)(1), 416.1400(a)(1). The next step is a request for the SSA to reconsider its determination. 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If a claimant is still dissatisfied with the reconsideration determination, he or she may request a hearing before an ALJ. 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The final administrative review step following a decision by an ALJ is to request the Appeals Council to review the decision. 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council denies the individual's request for review or grants the individual's request for review and issues its own decision, the individual may seek judicial review of the Commissioner's "final decision" by filing an action in federal district court within 60 days after receiving notice of the Appeals Council's action. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 422.210(a), (c). If one of the above steps is not pursued by the claimant, then the administrative determination or

decision becomes binding and judicial review is not allowed. *See* 20 C.F.R. §§ 404.905, 404.921, 404.955, 404.981, 416.1405, 416.1421, 416.1455, 416.1481.

Here, Plaintiff challenges the initial determinations that the SSA issued in 1997 and 2000 finding that Mr. Nix was not qualified for RIB because he did not meet the insured status requirement of having at least 40 quarters of coverage. (Doc 1 at. 24-31.) Yet contrary to Plaintiff's assertions, the SSA timely notified Mr. Nix of these determinations and his right to appeal them. (Doc 9-1 at 2-4.) However, there is no evidence indicating Mr. Nix or Plaintiff completed any subsequent step of the administrative review process outlined in the regulations following Mr. Nix's receipt of the SSA's initial determinations. Accordingly, Mr. Nix failed to exhaust the necessary administrative remedies in order to qualify for this Court's jurisdiction.

The Supreme Court has consistently acknowledged the general rule that parties must exhaust prescribed administrative remedies before seeking relief from the federal courts. *See Weinberger*, 422 U.S. at 766 (citing *McKart v. United States*, 395 U.S. 185, 93-94 (1969)). As the Supreme Court has observed, "[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 50 U.S. 140, 144-45 (1992). The exhaustion doctrine is grounded in Congress's delegation of authority to coordinate the branches of Government, and recognizes that agencies, not the

courts, ought to have primary responsibility for the programs that Congress has charged them to administer. *See id.* The exhaustion requirement also reflects the "commonsense notion" that "an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* Providing the agency with the opportunity to correct its own errors may eliminate the need for judicial involvement altogether; and if it does not moot the case entirely, it at least avoids piecemeal appeals and may produce a useful record for subsequent judicial consideration. *Id.* Thus, Plaintiff has failed to show that this Court has subject-matter jurisdiction over Mr. Nix's RIB claims under 42 U.S.C. § 405(g).

If the plaintiff raises a "colorable constitutional claim[]," courts may excuse the need for a "final decision . . . made after a hearing" and find that subject matter jurisdiction nonetheless exists. *See Califano v. Sanders*, 430 U.S. 99, 109 (1977); *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002); *Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985). However, where a constitutional claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial or frivolous," the claim may be dismissed for lack of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682-683 (1946)). Plaintiff's due process allegations regarding Mr. Nix's RIB applications are not colorable because they

appear to be made only for the purpose of obtaining jurisdiction over the claims relating to Mr. Nix's closed RIB applications.

Although Plaintiff alleges that the SSA violated Mr. Nix's due process rights because he never received the SSA's initial determinations on his RIB applications, Plaintiff has presented no support for this assertion, other than the self-serving testimony of her brother, Reginald Nix. (Tr. at 223, 225.) Plaintiff described her brother as the custodian of Mr. Nix's records, and Plaintiff's brother testified at the hearing that he was Mr. Nix's caregiver in 2014. (Tr. at 222, 225). However, there is nothing in the record to indicate Plaintiff's brother was Mr. Nix's records custodian or caregiver at the time Mr. Nix would have received the agency's initial determinations on his RIB claims in 1997 and 2000. (Smith Decl. ¶¶ 2, 4). Agency records indicate that Mr. Nix was living with Ms. Nix during this period, that neither required a representative payee during this time, and that Mr. Nix continued to make financial decisions through 2003. (Tr. at 4; Smith Decl. ¶¶ 2-4, Ex. 1, Exs. 3-5). Moreover, the testimony from Plaintiff's brother asserting that an agency employee told him that Mr. Nix's RIB claims remained open in 2014 contradicts the agency's electronic records, which show Mr. Nix's RIB claims were processed and marked as "adjudication complete" as of September 1997 and June 2000 (Smith Decl. ¶ 2, 4, Ex. 3, Ex. 6).

Accordingly, Plaintiff's claims relating to Mr. Nix's applications do not confer subject matter jurisdiction on this Court because she has failed to meet the administrative exhaustion requirements to establish jurisdiction under the Act and otherwise failed to identify a colorable constitutional claim.

### 2.    Mandamus Jurisdiction

Plaintiff also contends this Court has jurisdiction under the Mandamus Act, 28 U.S.C. § 1361 (Count VII). "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *see also Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (Mandamus is an "extraordinary remedy which should be utilized only in the clearest and most compelling of cases" (internal quotations omitted)). The Mandamus Act grants original jurisdiction to a district court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." 28 U.S.C. § 1361. "The test for jurisdiction is whether mandamus would be an appropriate means of relief." *Cash*, 327 F.3d at 1258 (internal quotations omitted). Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available. *See id.* In other words, "a writ of mandamus is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and

only if the defendant owes him a clear nondiscretionary duty." *Id.* (internal quotations omitted).

Plaintiff fails to prove that mandamus jurisdiction would be an appropriate avenue to obtaining the relief she seeks with respect to Mr. Nix's applications. With regard to the first element of obtaining mandamus relief, Plaintiff requests both the right to appeal and outright payment on the applications filed in 1997 and 2000. Plaintiff fails to show she has a clear right to either type of relief and fails to cite any authority showing a clear right to such relief. As discussed above, Plaintiff fails to show she or Mr. Nix timely submitted a request for reconsideration of the initial determinations issued in 1997 and 2000 denying Mr. Nix's RIB applications. Despite failing to timely request reconsideration of Mr. Nix's applications, the record shows that Plaintiff in essence still received the opportunity to present additional evidence and argument on the underlying issue with Mr. Nix's applications, specifically on Mr. Nix's quarters of coverage, and an ALJ and the Appeals Council considered this evidence. (Tr. at 4-10, 18-19, 140-59, 223-39). Plaintiff also fails to show the SSA erred in denying Mr. Nix's applications and should now be compelled to pay benefits. Plaintiff has thus failed to identify a clear right to relief.

With regard to the second element of obtaining mandamus relief, Plaintiff additionally fails to show the Commissioner has a non-discretionary duty to consider

any appeal of Mr. Nix's 1997 and 2000 applications that Mr. Nix failed to pursue for years after filing these applications, or to pay Plaintiff on these applications that the SSA denied at the initial level. As noted, the SSA nevertheless already considered additional evidence and argument Plaintiff submitted regarding Mr. Nix's applications and quarters of coverage but upheld the initial denial. (Tr. at 4-10, 18-19, 140-59, 223-39). The SSA's electronic records indicate the Commissioner acted in accordance with the Act and the implementing regulations in denying Mr. Nix's claims. (Doc. 9-1 at 1-5.) Plaintiff failed to show that the Commissioner was required to do more.

Third, Plaintiff also failed to show she exhausted all other avenues of relief. Congress has provided for review of Mr. Nix's RIB claims through 42 U.S.C. § 405(g). As noted previously, that scheme can also address the constitutional errors Plaintiff asserts, if they were meritorious, which they are not. The fact that Plaintiff is also seeking to vindicate constitutional rights does not negate the fact that her claims relating to Mr. Nix's applications arise under the Act.

Thus, Plaintiff's claims relating to Mr. Nix's applications are due to be dismissed because Plaintiff failed to establish mandamus jurisdiction and has not established any other basis to find jurisdiction for these claims.

**D.    Plaintiff's remaining claims that the ALJ's decision is not supported by substantial evidence and that the ALJ used an improper legal standard in deciding Ms. Nix's claims (Counts II and III) fail**

This Court's role in reviewing claims brought under the Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383

U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The Court has reviewed the administrative record, including the ALJ's decision, and the Appeals Council's detailed response to Plaintiff's appeal, and finds that it is supported by substantial evidence and in accord with applicable law. In order to be eligible for widow's benefits under 42 U.S.C. § 402(e), an applicant must be at least age sixty, unmarried, not entitled to retirement benefits higher than the widow's primary amount, and the widow of an individual who was fully insured under the Act. A claimant must attain the age of 62 and have fully insured status in order to qualify for Social Security Retirement Insurance Benefits under 42 U.S.C. § 402(a). Fully insured status is established if an individual has credit for the necessary quarters of

coverage granted for work covered under the Social Security Act. 42 U.S.C. § 414. The ALJ properly applied these statutes in finding that Ms. Nix was not entitled to WIB and LSDP on the earnings record of Mr. Nix based upon the fact that he had earned 38, rather than the required 40, quarters of coverage. Although the ALJ stated that the only issue before him was whether Ms. Nix was entitled to WIB and the LSDP, he discussed the issue raised by Reginald Nix in the interest of completeness. He stated that Reginald Nix submitted Army Reserve Pay Voucher Summaries and Military Pay Vouchers for the years 1966-1971. All of the pay voucher summary sheets specifically state in the top corner that the pay was for "Inactive Duty." No social security taxes were withheld on any of the Military Pay Vouchers submitted. The ALJ stated that no mistakes were made concerning the compilation of Mr. Nix's earnings record. Plaintiff has failed to demonstrate authority showing that the Commissioner's decision was erroneous.

## V.    CONCLUSION

For the reasons stated, the Commissioner' motion to dismiss several of the claims in Plaintiff's complaint (doc. 9) is due to be granted and these claims dismissed. Additionally, upon review of the administrative record, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate closing order will be entered.

**DONE** and **ORDERED** on March 30, 2022.

_____
L. Scott Coogler
United States District Judge

160704